UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES E. GRIFFIN, II,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>RACQUEL E. ZURBANO *et al.*,<br><br>　　　　　　　　Defendants | Case No.:  16-CV-2715-JLS(WVG)<br><br>**ORDER ON PLAINTIFF'S MOTIONS TO COMPEL, FOR EXTENSION OF TIME, AND TO STAY PROCEEDINGS**<br><br>**[Doc. Nos. 71, 79, 83 & 94.]** |

Pending before the Court are Plaintiff's motions to compel further responses to written discovery (Doc. Nos. 71 & 79), his motion to stay the pre-trial proceedings (Doc. No. 94), and his motion for more time to conduct discovery (Doc. No. 83). As the Court explains below, his motions to compel are GRANTED in part and DENIED in part. Plaintiff's motions to stay and for more time are DENIED.

**A.    Plaintiff's Non-Compliance with Court's Procedural Requirements is Excused**

As an initial matter, Defendant Spence asks the Court to deny Plaintiff's motions based on his lack of compliance with this Court's meet and confer and other ministerial requirements before the Court will consider discovery disputes in civil cases. Given that Plaintiff is *pro se*, is in prison, and has been moved between prisons, the Court excuses his non-compliance with these requirements and accordingly proceeds to the merits.

**B.     Doc. Nos. 71 & 79.  Plaintiff's Motions to Compel Further Discovery Responses**

Plaintiff seeks to compel responses to all of the written discovery he propounded upon Defendants.  Although his motions do not specify which specific sets of discovery he references, a meet and confer letter he sent to defense counsel indicates that he wants responses to all of the written discovery he propounded. (Doc. No. 71 at 7.)  This includes one set of requests for production of documents ("RFPs") propounded to Defendants collectively, one set of interrogatories ("ROGs") propounded to Pence, and five sets of requests for admissions ("RFAs") propounded to Spence, Zurbano, Santos, Roggelin, and Steadman.[1]  However, within those documents, he does not specify the particular requests for which he seeks further responses.  As a result, the Court has reviewed *all* requests and responses in each of these sets and rules as set forth below.

**1.**     As an initial matter, the Court finds that Plaintiff did not attempt to supplement or clarify his many unintelligible and improperly phrased requests when defense counsel requested clarifications to allow Defendants a better ability to respond to the requests. (Doc. No. 76 at 6.)  When asked for clarifications, Plaintiff did not propound any clarifying discovery requests and continued to pursue his original sets. (Doc. No. 76 at 6.)  Moreover, Plaintiff did not address or inquire about Defendants' disputed responses when he had a chance to do so face-to-face during his May 11, 2018 deposition. (Call Decl., Doc. No. 76 at 10 ¶ 14.)  Even before the deposition, defense counsel also flew to the prison where Plaintiff was housed for in-person meet-and-confer efforts. (Call Decl., Doc. No. 76 at 9 ¶ 13.)  In sum, Plaintiff could have attempted to cure the defects discussed below, but did not do so—instead choosing to pursue his original discovery requests.

**2.**     With respect to all five sets of request for admissions, the Court has reviewed each RFA and finds they exhibit multiple defects that make them difficult or impossible for Spence, Zurbano, Santos, Roggelin, or Steadman to admit or deny them.  The RFAs

---

[1] Besides these, Plaintiff has not propounded any other written discovery or served anything that supplemented or clarified these sets. (Call Decl., Doc. No. 76 at 9 ¶ 9.)

2
16-CV-2715-JLS(WVG)

contain multiple defects that appear frequently. One such defect is their pointedly argumentative nature, which for example requires Spence to admit that he helped "cause [Plaintiff] to have a [f]ull [m]ental [b]reakdown, causing severe mental stress and depression . . . ." (Doc. No. 76-2 at 8 (RFA 15 to Spence).) As another example, Zurbano is asked to admit that he "conspired" with others in a "medical conspiracy" against the general inmate population. (Doc. No. 76-2 at 14 (RFA 5 to Zurbano).) As a final illustrative example, Steadman is asked to admit that he made "false, perjured serious criminal allegations/charges" against Plaintiff "in collusion, concert, [and] conspiracy to inflict intentional retaliation/reprisals . . . ." (Doc. No. 95 at 5 (RFA 6 to Steadman).)

Another defect that runs throughout the RFAs is their highly compound nature that makes it impossible for Defendants to either admit or deny them. (*See, e.g.*, Doc. No. 76-2 at 6 (RFA 9 to Spence); Doc. No. 76-2 at 15 (RFA 7 to Zurbano) Doc. No. 76-2 at 27 (RFA 10 to Santos); Doc. No. 76-3 at 3 (RFA 1 to Roggelin); Doc. No. 95 at 6 (RFA 8 to Steadman).) Many RFAs also seek admissions on subject matter that has no relevance in this case, are vaguely phrased, are difficult to understand or decipher, or call for speculation about what other persons knew or how they acted. The problem with Plaintiff's RFAs is that they exhibit more than one of these defects at the same time. The combined impact of these defects for each RFA renders them unanswerable. And although Plaintiff has been given a chance to amend his RFAs for some time now, he has not done so. Accordingly, except as set forth immediately below, the Court DENIES Plaintiff's motions to compel additional responses to the RFAs propounded to Spence, Zurbano, Santos, Roggelin, and Steadman.

      **a.**      The foregoing notwithstanding, the Court was able to find one RFA that was worded in a manner that allowed it to be answered. RFA No. 4 to Steadman asks him to "Admit that at no time during your interactions with plaintiff inside the main clinic area on 3/17/15 at approximately 11:45 AM did you activate your personnel [sic] alarm for any reason[]." (Doc. No. 95 at 5 (excessive punctuation omitted).) This straightforward RFA asks Steadman to admit or deny a specific event (activation of a personal alarm) at a

3

16-CV-2715-JLS(WVG)

specific time (March 17, 2015 at approximately 11:45 a.m.) and in an identifiable location (the main clinic area referenced in Plaintiff's case). Steadman either did or did not activate the personal alarm on this date, at this time, and in this location. This RFA does not suffer from the defects described above, Steadman's objections for RFA No. 4 are OVERRULED, and Steadman is accordingly ORDERED to provide a substantive response.

      **3.**    With respect to Plaintiff's set of interrogatories propounded to Spence, the Court finds that further responses are warranted for **ROG Nos. 1** (seeking Spence's job title and description of his position), **3** (seeking identification of any policy and procedure by number, if any exist, related to responding to employees' activation of their personal alarms), **4** (seeking the identities of officers who responded to a personal alarm on a specific date, at a specific time, and to a specific location), **5** (self-explanatory), and **8** (asking to identify policies and procedures that govern disciplinary actions related to investigations of threats and assaults). To the extent these ROGs also seek documents and such documents exist, Defendants shall produce responsive documents in the interest of avoiding further delay.

      Except for the ROGs identified above, the remaining ROGs to Spence are overbroad or seek irrelevant information that does not bear on this case. Accordingly, Spence needs not further respond to any ROGs that are not identified above.

      **4.**    With respect to the set of requests for production of documents propounded to all Defendants as a group, Defendants have produced more than 200 pages of documents and have largely responded to the requests. However, in response to several RFPs, they state that they are "still in the process of searching for documents responsive to this request and will file a supplemental response once the search is complete." (Doc. No. 76-1 at 6-8 (RFP Nos. 5, 6, 6b, 9).) The parties' filings contain no indication that this search has concluded, whether any responsive documents existed, whether a supplemental response was served, or whether any responsive documents were produced. Accordingly,

Defendants shall supplement their responses to these RFPs to clarify. Other than these supplemental responses, no further RFP responses are necessary.

      **a.** The foregoing notwithstanding, Defendants may potentially have to further respond to Plaintiff's request for certain personnel records in RFP No. 1.[2] "Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) ("Government personnel files are considered official information."). "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Id.* at 1033-34. "The balancing approach of the Ninth Circuit is mirrored in this and other courts' previous determinations that a balancing test is appropriate when the disclosure of law enforcement files in a civil action is at issue." *Doubleday v. Ruh*, 149 F.R.D. 601, 609 (E.D. Cal. 1993). Documents that are a part of the personnel records of officers defending civil rights actions, while containing sensitive information, are within the scope of discovery. *Soto v. City of Concord*, 162 F.R.D. 603, 614-15 (N.D. Cal. 1995) (citing *Hampton v. City of San Diego*, 147 F.R.D. 227, 229 (S.D. Cal. 1993)); *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992).

At this stage, the Court is unable to determine if any personnel record documents would be responsive or whether the balancing of benefits and disadvantages warrants disclosure. Accordingly, personnel records for all Defendants shall be submitted for *in camera* review by the Court. *See Caruso v. Solorio*, No. 15-CV-780-AWI-EPG(PC), 2018 U.S. Dist. LEXIS 73413, at *4-5 (E.D. Cal. Apr. 30, 2018). The personnel records shall be produced in their entirety.

---

[2] This RFP also falls in the same category as the RFPs identified above, but the Court suspects that no personnel file documents have been produced. For efficiency's sake, the Court treats this RFP differently.

C. **Doc. No. 83. Plaintiff's Motion for Extension of Time is DENIED.**

Citing his transfer to a new prison on May 12, 2018 and the ensuing delay in receiving six boxes of legal materials, plaintiff seeks an unspecified amount of additional time to conduct fact and expert discovery.

Federal Rule of Civil Procedure 16(b)(4) "provides that a district court's scheduling order may be modified upon a showing of 'good cause,' an inquiry which focuses on the reasonable diligence of the moving party." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007) (citing *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). In *Johnson*, the Ninth Circuit explained,

> Rule 16(b)'s "good cause" standard primarily concerns the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." [T]he focus of the inquiry is upon the moving party's reasons for seeking modification . . . . If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).

Here, Plaintiff has made no showing of diligence despite multiple extensions of the original Scheduling Order. As a result of the multiple extensions, Plaintiff has already been provided multiple opportunities to conduct discovery. On June 1, 2017, the Court set the original fact discovery deadline as November 13, 2017 and the original expert discovery deadline as April 19, 2018. (Doc. No. 18 at ¶ 6.) The Court subsequently granted the parties—including Plaintiff—more time to conduct fact and expert discovery and ultimately set the current fact discovery deadline as May 11, 2018 and the current expert discovery deadline as July 27, 2018. (Doc. No. 62 at ¶ 7.) Thus, the original fact discovery deadline was extended by an additional 6 months on top of the initial 5 months the parties were granted. The Court has provided the parties ample opportunity and has granted every request for extension, resulting in *four* Scheduling Orders. (Doc. Nos. 18, 28, 48 & 62.)

In support of his extension request, Plaintiff states he received five of the six boxes that contain legal material for all of his lawsuits by June 16, 2018—he received three boxes on May 31 and two more boxes on June 16. However, Plaintiff's lack of legal materials for this limited time period fails to show the full picture of the discovery timeline in this case. At discussed above, since June 1, 2017, the Court issued four Scheduling Orders and has extended the discovery cutoffs multiple times. Thus, with the full discovery timeline in mind, Plaintiff being separated from his legal materials for slightly over one month fails to explain why he could not comply with the discovery period, which was ongoing for 11 months as to fact discovery and 13 months as to expert discovery.

The Court further notes that the date which Plaintiff alleges he was first separated from his boxes—May 12—was the day after the May 11 fact discovery deadlines. Thus, whatever happened on May 12 is irrelevant as far as the fact discovery deadline is concerned since it had already expired.

Ultimately, there is no good cause to extend the discovery timelines a fifth time in this case. Plaintiff's motion is DENIED. The foregoing notwithstanding, in a separate Order, the Court will grant Plaintiff some additional time to file oppositions to Defendants' pending summary judgment motions.

**D.      Doc. No. 94. Plaintiff's Motion to Stay is DENIED.**

Finally, Plaintiff seeks a stay of pretrial proceedings. On August 22, 2018, the Court vacated all trial-related dates until resolution of the pending summary judgment motions. Accordingly, the Court has already taken the action that Plaintiff requests. Plaintiff's motion for a stay is DENIED as moot.

**E.      Summary of Rulings**

**1.** Plaintiff's motions to compel further responses to RFAs propounded to Spence, Zurbano, Santos, Roggelin, and Steadman are GRANTED in part and DENIED in part. Steadman is ORDERED to provide a substantive response to **RFA No. 4 no later than September 28, 2018**.

7

16-CV-2715-JLS(WVG)

**2.** Plaintiff's motions to compel responses to the set of RFPs propounded to all Defendants is GRANTED in part and DENIED in part. As explained above, Defendants shall clarify their original responses to **RPF Nos. 5, 6, 6b, and 9 no later than September 28, 2018**.

**No later than September 28, 2018**, the Attorney General's Office is ORDERED to lodge *all* Defendants' personnel files in their entirety for *in camera* review. The documents shall be Bates-stamped, and the Court will order disclosure, if any is required, based on specified Bates numbers.

**3.** Plaintiff's motions to compel the set of ROGs propounded to Spence is GRANTED in part and DENIED in part. Spence is ORDERED to respond to **ROG Nos. 1, 3, 4, 5, and 8 no later than September 28, 2018**. To the extent these ROGs also seek document—and those documents exist—Defendants shall produce responsive documents on the same date in the interest of avoiding further delay.

**4.** Plaintiff's motion for extension of time is DENIED. (Doc. No. 83.)

**5.** Plaintiff's motion to stay is DENIED as moot. (Doc. No. 94.)

**6.** The Court will extend the briefing schedule on Defendants' pending summary judgment motions. The schedule will be extended through a separate Order.

**IT IS SO ORDERED.**

DATED: September 20, 2018

Hon. William V. Gallo
United States Magistrate Judge