UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| CHARLES E. GRIFFIN, II, | Case No.: 16-CV-2715-JLS-WVG |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 87, 88)** |
| v. | |
| ZURBANO, *et al.*, | |
| Defendants. | |

## I. <u>INTRODUCTION</u>

Presently before the Court are two motions for summary judgment. The first is filed on behalf of defendants R. Zurbano, D. Steadman, M. Santos, and M. Roggelin. ("Zurbano Mot.," ECF No. 87.) The second is filed on behalf of defendant K. Spence. ("Spence Mot.," ECF No. 88.)

The Court has thoroughly reviewed the motions, Plaintiff's opposition[1], and the response filed in support of the Zurbano Motion. For the reasons discussed below, the Court **RECOMMENDS** both motions be **GRANTED** and judgment be entered in favor of all defendants.

///

---

[1] Plaintiff did not file an opposition to the Spence Motion.

## II. BACKGROUND

### A. Relevant Procedural Background

Charles E. Griffin, II ("Plaintiff"), proceeding *pro se*, filed a civil rights Complaint ("Complaint") pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 1.) Plaintiff asserts violations of his First, Sixth, Eighth, and Fourteenth Amendment rights, as well as two state tort claims. (*Id.* at ¶ 10.) On August 10, 2018, defendants Zurbano, Steadman, Roggelin, Santos, and Spence (collectively "Defendants") filed motions for summary judgment. (ECF Nos. 87, 88.) The Court entered a briefing schedule, requiring Plaintiff to file any opposition on or before October 31, 2018. (ECF No. 89.) Due to delayed discovery issues, the Court extended the date on which Plaintiff must file an opposition to each motion to November 2, 2018. (ECF No. 115.) On November 1, 2018, Plaintiff filed an *ex parte* motion requesting an extension of time to file an opposition to the Spence Motion. (ECF No. 121.) This motion was granted on November 29, 2018, and Plaintiff was allowed until December 14, 2018 to file an opposition to the Spence Motion. (ECF No. 124.)

On November 2, 2018, Plaintiff filed a Response in Opposition to the Zurbano Motion. (Pl's Opp'n, ECF No. 120.) On December 5, 2018, Plaintiff filed another *ex parte* motion requesting an additional extension of time to file an opposition to the Spence Motion. (ECF No. 126.) The Court denied this request because Plaintiff had been afforded more than four months to complete and file his opposition. (ECF No. 128.)

On December 7, 2018, defendants Zurbano, Steadman, Roggelin, and Santos filed a Reply in Support of the Zurbano Motion. (ECF No. 125.)

### B. Relevant Factual Background

Plaintiff is presently, and was at all relevant times, a prisoner in the custody of the California Department of Corrections and Rehabilitation at Richard J. Donovan Correctional Facility ("RJD"). (Def's Facts, ECF No. 87-8 at ¶ 1; Pl's Opp'n at 60:2-4.[2])

---

[2] All page citations refer to the page numbers assigned and stamped by the CM/ECF system.

Plaintiff suffers from numerous hip and back ailments that cause chronic pain. (Pl's Opp'n at 73, 75.) Plaintiff was referred to a specialist physician by Plaintiff's primary care physician to receive trigger point injections in his hip for pain management, on or about March 7, 2015. (Def's Facts at ¶ 7.) Thereafter, Plaintiff experienced new pain at the injection sites. (Pl's Opp'n at 60:14-21; Def's Facts at ¶ 11.)

On March 10, 2015, Plaintiff submitted a CDC-7362 Request for Health Care Services form, one of the ways a prisoner may request medical services, complaining of the new pain. (Def's Facts at ¶ 3; Pl's Opp'n at 60:2-4, 77.) Once a CDC-7362 form is filed it is reviewed by a registered nurse who determines whether the requested services can be provided by a nurse or whether the prisoner must see a physician. (Def's Facts at ¶ 4; Pl's Opp'n at 60:2-4.) The reviewing nurse may only refer the prisoner to a primary care physician and cannot refer the prisoner to a specialist. (Def's Facts at ¶ 5, Pl's Opp'n at 60:2-4.) The primary care physician may then refer the prisoner to a specialist as needed. (*Id*.)

On March 11, 2015, Plaintiff submitted an additional CDC-7362 form, complaining of the same symptoms. (Pl's Opp'n at 78.) Later that same day, Plaintiff was seen by Santos, a primary care physician at RJD. (Pl's Opp'n at 60:14-21; Def's Facts at ¶ 9.) During the visit, Plaintiff's morphine prescription was reduced from thirty milligrams three times per day to fifteen milligrams twice a day. (Def's Facts at ¶ 13; Pl's Opp'n at 83.) Santos also added 600 milligrams of ibuprofen three times per day. (*Id*.)

On March 14, 2015, Plaintiff submitted two CDC-7362 forms. (Compl. at 47-48.) One of these forms asked Zurbano to "stop intercepting" Plaintiff's request forms and stated: "this is my last warning to you." (*Id*. at 47; Zurbano Decl., ECF No. 87-7, Ex. 1.) This form was reviewed on March 16, 2015. (*Id*.) Later that day, Zurbano authored a CDC-128-B informational chrono that documented Plaintiff's comments and Zurbano's perception that the comments were threatening. (Compl. at 49; Zurbano Decl., ¶ 13.) Zurbano also reported the issue to her supervisor, Roggelin. (Zurbano Decl. at ¶ 14, Roggelin Decl., ECF No. 87-5 at ¶ 6.) Thereafter, Roggelin drafted a CDC-128-B chrono

alerting Zurbano and local law enforcement of Plaintiff's comments. (Compl. at 50; Roggelin Decl. at ¶ 8.) Plaintiff never met nor had any personal interactions with Roggelin. (Def's Facts at ¶ 23; Pl's Opp'n at 60:2-4.)

Plaintiff had another medical appointment on March 17, 2015. (Compl. at ¶ 42; Def's Facts at ¶ 26.) A medical supervisor requested Steadman, another nurse within the facility, to see Plaintiff instead of Zurbano. (Steadman Decl., ECF No. 87-4 at ¶ 8.) Plaintiff had never interacted with Steadman prior to March 17, 2015. (Def's Facts at ¶ 27.) Plaintiff attempted to leave the appointment without being treated but was prevented from doing so without completing a medical treatment refusal form. (Def's Facts at ¶¶ 28-29, Call Decl., ECF No. 87-2 at 56:14-20, 57:19-58:22; Pl's Opp'n at ¶¶ 28-29.) Two correctional officers assisted Steadman in gaining compliance from Plaintiff. (Weitzel Decl., ECF No. 87-3 at ¶ 6; Call Decl. at 56:4-20.) One of the officers, Officer Weitzel, stood between Plaintiff, who was sitting on a bench, and Steadman, who was standing, while Steadman explained the medical treatment refusal form and Plaintiff completed it. (Weitzel Decl. at ¶ 7; Call Decl. at 59:16-24.) During this time, Officer Weitzel observed Plaintiff "swat his hand in" Steadman's direction.[3] (Weitzel Decl. at ¶ 8.) Steadman described Plaintiff's actions "as if he was trying to swat [her] away from him." (Steadman Decl. at ¶ 17.)

During the interaction between Plaintiff and Steadman, someone in another area of the medical clinic activated their personal alarm.[4] (Compl. at ¶ 46; Def's Facts at ¶ 35.)

---

[3] It is potentially noteworthy that Officer Weitzel did not view Plaintiff's behavior as assaultive in nature and did not believe Plaintiff's behavior required any use of force. (Weitzel Decl. at ¶ 8.)

[4] It is unclear whether the alarm was triggered as a result of Plaintiff's behavior or an unrelated incident. Plaintiff indicates in his Complaint and deposition that the alarm sounded in another area of the medical clinic. Weitzel, in his declaration, makes no mention of an alarm going off at all. Steadman, in her declaration, indicates she is also unaware of who sounded their personal alarm. (Steadman Decl. at ¶ 19.) When reading the Rules Violation Report and Steadman's declaration, it appears the responding officers were there to detain or restrain Plaintiff. (*See*: Compl. at 57 ("Immediately after someone hit the alarm, custody officers came into the clinic and [Steadman] stepped out of the way so that they

One of the responding officers was an unnamed sergeant. (Spence Decl., ECF No. 88-6 at ¶ 11; Williams Decl., ECF No. 88-5 at 38:4-11.) While not entirely clear, it appears that Steadman reported Plaintiff's actions to the sergeant, who then reported the information to Spence, the lieutenant on duty. (Steadman Decl. at ¶ 20; Williams Decl. at 38:4-19). Steadman subsequently prepared a Rules Violation Report ("RVR"). (Steadman Decl. at ¶¶ 20-21; Compl. at 57-58.) The RVR was then reviewed by Spence. (Spence Decl. at ¶¶ 10, 11, 15.)

Pursuant to the California Code of Regulations, when "an inmate's presence in an institution's" general population "presents an immediate threat to the safety of the inmate or others … the inmate shall be immediately removed from the [general population] and placed in administrative segregation."[5] 15 CCR § 3335. After reviewing the RVR completed by Steadman, Spence determined that Plaintiff would be charged with threatening a staff member. (Spence Decl. at ¶ 11.) Spence then created an Administrative Segregation Unit Placement Notice which formally noticed Plaintiff he was being placed in administrative segregation ("AdSeg"). (*Id.*) Spence informed the Facility Captain, Captain Lawson, that he placed Plaintiff in AdSeg before Spence's shift ended. (*Id.* at ¶ 16.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) mandates the grant of a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Judgment must be entered if "there

---

could escort [Plaintiff] out"); Steadman Decl. at ¶ 19 ("…custody officers responded and Plaintiff was removed from the clinic")).

[5] Spence requests the Court takes judicial notice of five California codes of regulation. This request is GRANTED. *See United States v. Woods*, 335 F.3d 993, 1000-01 (9th Cir. 2003) (holding it is proper for the district court to judicially notice an administrative regulation); *see also Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1153 n.3 (9th Cir. 2017) (stating that it is proper for the court to take judicial notice of statutes and regulations not included in the Plaintiff's complaint).

can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Failure "to make a sufficient showing on an essential element" of a case warrants the grant of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party bears the initial burden of demonstrating the "absence of a genuine issue of material fact." *Id.* The burden then shifts to the nonmoving party to establish that there is a genuine dispute of material fact. *Id.* at 324. "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' different versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Each party's position as to whether a fact is disputed or undisputed must be supported by: (1) citation to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) a showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("[R]equiring the district court to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair."). If a party supports its motion by declaration, the declaration must set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4).

Ordinary *pro se* litigants, like other litigants, must comply strictly with the summary judgment rules. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). *Pro se* inmates are, however, expressly exempted from strict compliance with the summary judgment rules. *Id*. Courts should "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." *Id*. In addition, the Court may consider as evidence all contentions "offered [by a plaintiff] in motions and

pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). This approach "exempts *pro se* inmates from strict compliance with the summary judgment rules, but it does not exempt them from all compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (citing *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (emphasis in original)).

## IV. DISCUSSION

Plaintiff alleges that Defendants have violated his First, Sixth, Eighth, and Fourteenth Amendment constitutional rights.[6] (Compl. at ¶ 10.) Defendants move for summary judgment in their favor as to each cause of action. The Court therefore addresses in turn each of Plaintiff's allegations and Defendants' arguments in favor of summary judgment.

### A. Plaintiff's First Amendment Claim

Plaintiff claims that Defendants unlawfully retaliated against Plaintiff for exercising his First Amendment right to petition for redress of grievances. (Compl. at ¶ 89.)

To maintain a claim of retaliation pursuant to the First Amendment, a prisoner must show that "(1) … a state actor took some adverse action against [him] (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

---

[6] "Where an amendment 'provides an explicit textual source of constitutional protection against a particular sort of government behavior,' it is that Amendment … that 'must be the guide for analyzing that complaint.'" *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion); *see also Campos v. City of Merced*, 709 F.Supp.2d 944, 959-60 (E.D. Cal. 2010). Here, Plaintiff merely mentions the Sixth Amendment and makes no allegation that would be cognizable under the Sixth Amendment. Thus, this Amendment is not discussed. Additionally, Plaintiff claims his Fourteenth Amendment rights were violated because of, as he alleges, inadequate medical procedures. (Compl. at 92.) This is more appropriately discussed under the Eighth Amendment and will be analyzed as such.

7

correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Regarding the first element, a plaintiff need not prove that the alleged adverse action was itself a violation of a constitutional right. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). An adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. *Pinard v. Clatskanie School Dist.*, 467 F.3d 755, 770 (9th Cir. 2006); *see also Mendocino Environmental Center v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). In the prison context, the action taken must be clearly adverse to the plaintiff. *See e.g., Rhodes*, 408 F.3d at 568 (noting that arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances was sufficient to plead an adverse action); *Pratt*, 65 F.3d at 806 (reaffirming that an allegation of retaliatory prison transfer and double-cell status sufficiently states a claim of retaliation).

"To raise a triable issue as to motive, [a plaintiff] must offer 'either direct evidence of retaliatory motive or at least one of the three general types of circumstantial evidence of that motive.'" *McCollum v. CDCR*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)). Circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *Id*. "[M]ere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

### i. March 11 Incident

Plaintiff alleges that on March 11, 2015, Zurbano and Santos retaliated against Plaintiff in violation of his First Amendment rights by reducing his morphine prescription. (Compl. at ¶¶ 31-34.)

Here, Plaintiff has failed to demonstrate a genuine dispute of material fact that either Zurbano or Santos took an adverse action against Plaintiff. Santos has declared that as the physician, only he could reduce or otherwise modify Plaintiff's medication. (Santos Decl.

at ¶ 8.) Further, Santos has declared that even if Zurbano had requested a reduction in Plaintiff's medication, a claim which he denies, Santos would "not take direction from a registered nurse as to what to prescribe a patient." *Id*. Thus, Zurbano could not have taken any action at this point that could have been adverse to Plaintiff, in the context of the allegations.

Moreover, Plaintiff has provided no evidence that the reduction in his medication by Santos was an adverse action. As discussed further below, a difference of opinion regarding medical treatment is insufficient to sustain a constitutional violation. To the extent Plaintiff refers to all Defendants generally in this allegation, there is no evidence that any other defendant had knowledge of the events that transpired on March 11, 2015, let alone took any adverse action. Additionally, Plaintiff has provided no evidence that demonstrates that Zurbano, Santos, or any other defendant had any retaliatory motive in reducing Plaintiff's prescription.

### ii. March 16 Incident

Plaintiff alleges that defendants Zurbano and Roggelin retaliated against him in violation of his First Amendment rights when they each filed a CDC-128-B general chrono after reviewing Plaintiff's CDC-7362 form on March 16, 2015. (Compl. at ¶¶ 64, 66, 75, 89.) Defendants argue that drafting a chrono does not amount to an adverse action and Plaintiff cannot show the requisite motive to sustain a retaliation claim. (Zurbano Opp'n at 19:17-20:27.)

Plaintiff has failed to demonstrate a genuine dispute of material fact that as to whether any Defendant took an adverse action against him. This Court agrees with other courts within the Ninth Circuit that have found that the entry of a CDC-128-B general chrono does not constitute an adverse action because such entries are merely informational.[7] *See e.g.*, *Garcia v. Blahnik*, 2017 WL 1226863, at *12-13 (S.D. Cal. 2017)

---

[7] California Code of Regulations states that a CDC-128-B chrono is a memorandum "used to document information about inmates and inmate behavior." 15 CCR § 3000.

(granting summary judgment because a CDC 128-B general chrono itself does not constitute an adverse action); *Jenkins v. Caplan*, 2010 WL 3742659, at *2 (N.D. Cal. Sept. 16, 2010) (granting summary judgment for defendant where plaintiff failed to present evidence that chrono constituted adverse action); *Williams v. Woddford*, 2009 WL 3823916, *3 (E.D. Cal. 2009) ("the alleged filing of the false administrative chrono fails to state a claim because it is not a sufficient adverse action for a retaliation claim because the chrono was merely informational"); *Samano v. Copeland*, 2008 WL 2168884, *2 (E.D. Cal. 2008) (dismissing retaliation claim for failure to state a claim because issuing a counseling chrono did not constitute an adverse action); *but see Martin v. Desha*, 2017 WL 345202 at 4 (E.D. Cal. Jan. 23, 2017) (finding that allegations that general chrono could impact parole sufficient at the pleading stage to defeat a motion to dismiss).

Moreover, Plaintiff provides no evidence that either chrono entry was false. Even accepting as true Plaintiff's allegation that the chrono was falsified, the result remains the same because a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (9th Cir. 1986). To the extent Plaintiff refers to all defendants generally in this allegation, there is no evidence that any of the other defendants in this case had knowledge of the events that transpired on March 16, 2015, let alone took any adverse action. Additionally, Plaintiff has provided no evidence that demonstrates that Zurbano, Roggelin, or any other defendant had any retaliatory motive when the informational chronos were filed.

### iii. March 17 Incident

Plaintiff alleges that Steadman retaliated against Plaintiff by filing a false Rules Violation Report. (Compl. at ¶ 73.) The entry of an RVR may constitute an adverse action. *See Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997); *see also Williams*, 2009 WL 3823916, at *3 (E.D. Cal. 2009). Even assuming Plaintiff's allegation as true and that the RVR constitutes an adverse action, Plaintiff fails to provide any evidence that drafting the RVR was done with the required retaliatory motive. Thus, there is no triable issue of

10

16-CV-2715-JLS-WVG

material fact as to the First Amendment claims against Steadman.

Regarding Spence, Plaintiff has provided no evidence that suggests Spence was acting with a retaliatory motive. In his deposition, Plaintiff conceded he "had no clue" why Spence would retaliate against him. (Williams Decl. at 54:17-19.) Thus, there is no triable issue of material fact as to First Amendment claims against Spence.

Plaintiff has provided no evidence that demonstrates any of the other defendants had any part in, or even knew about, the drafting of the March 17 RVR or Plaintiff's removal to AdSeg on March 17, 2015. Thus, there is no triable issue of material fact as to Plaintiff's First Amendment claim to the remaining defendants.

### iv. First Amendment Claims Conclusion

Because Plaintiff cannot establish the first or second elements of retaliation, all defendants are entitled to summary judgment with respect to Plaintiff's First Amendment retaliation claims. Accordingly, the Court **RECOMMENDS** both motions be **GRANTED** and summary judgment entered on behalf of Defendants as to these claims.

### B. Plaintiff's Eighth Amendment Claim

Plaintiff argues that Defendants acted with deliberate indifference to his medical needs in violation of his Eighth Amendment rights. (Compl. at ¶¶ 91, 96.) Specifically, Plaintiff alleges that Santos improperly reduced his morphine prescription. (*Id.* at 28–29; Pl's Opp'n at 32.) Additionally, Plaintiff asserts that Defendants Zurbano, Steadman, and Roggelin were deliberately indifferent because they "set into motion, numerous false" claims that resulted in time in AdSeg, a loss of benefits, and loss of an opportunity to parole. (Compl. at ¶¶ 91, 97.)

The Eighth Amendment protects individuals from cruel and unusual punishment. U.S. Const. amend. VIII. Under the Eighth Amendment, prison officials must not "use excessive force against prisoners" and "must provide humane conditions of confinement" which includes "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Deliberate indifference to a prisoner's serious illness or injury" violates an individual's Eighth Amendment rights and states a cause of action under 42

U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976.) The indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.*

"To establish an Eighth Amendment violation, a prisoner must satisfy both the objective and subjective components of a two-part test." *Toguchi v. Soon Hwang Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotation omitted). "First, there must be a demonstration that the prison official deprived the prisoner of the minimal civilized measure of life's necessities." *Id*. "Second, a prisoner must demonstrate that the prison official acted with deliberate indifference in doing so." *Id*. Deliberate indifference requires something more than negligent behavior. *Farmer*, 511 U.S. at 835. Additionally, a "mere difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference." *Toguchi*, 391 F.3d at 1058. "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in a conscious disregard of an excessive risk to the prisoner's health.'" *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff claims Santos acted with deliberate indifference by lowering Plaintiff's morphine treatment without sufficient examination. (Compl. at ¶¶ 81, 84.) Here, Santos states that he reduced Plaintiff's morphine prescription and prescribed an anti-inflammatory drug based upon his medical opinion and "belief that it was the best course of treatment to address Plaintiff's condition." (Santos Decl. at ¶¶ 10, 11.) Plaintiff does not offer evidence, besides his own declaration, to dispute this fact. (*See* Pl's Opp'n at 61, 77–78, 86–89.) Moreover, Plaintiff offers no evidence that Santos reduced Plaintiff's medication in blatant disregard of Plaintiff's medical injury or that the reduced medication was medically unacceptable. Therefore, Plaintiff has failed to show there is a triable issue of fact as to whether Santos violated Plaintiff's Eighth Amendment rights.

Plaintiff next asserts that Roggelin, Zurbano, and Steadman subjected Plaintiff to

cruel and unusual punishment by filing false reports which resulted in Plaintiff receiving time in AdSeg, a loss of benefits, and loss of an opportunity to parole. (Compl. at ¶¶ 91, 97.) Plaintiff further alleges Spence subjected Plaintiff to cruel and unusual punishment by failing to investigate these purportedly false reports. (*Id*.) However, Plaintiff fails to provide any evidence to support either the objective or subjective requirements to sustain an Eighth Amendment claim. Plaintiff provides no evidence that Defendants deprived Plaintiff "of the minimal civilized measures of life's necessities." *Toguchi*, 391 F.3d at 1057. Additionally, Plaintiff provides no evidence that any of Defendants' actions were done with deliberate indifference. Thus, Plaintiff fails to demonstrate a genuine dispute of material fact as to his Eighth Amendment claims against Roggelin, Zurbano, Steadman, and Spence.

Since Plaintiff failed to make a sufficient showing on both essential elements of his Eighth Amendment claims, the Court **RECOMMENDS** that Defendants' Motion regarding Plaintiff's Eighth Amendment claims be **GRANTED** and summary judgment entered on behalf of Defendants.

### C. Conspiracy

Plaintiff makes numerous allegations of a broad conspiracy in his complaint without tying the conspiracy allegation to a constitutional violation. (Compl. at ¶¶ 64, 73, 75, 81.) Defendants argue Plaintiff can provide no factual support for a conspiracy claim. (Zurbano Mot. at 29:9-10; Spence Mot. at 10:21-27.)

To sustain a claim of conspiracy under Section 1983, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id*. at 441. This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir.

1999). In addition, a conspiracy to violate constitutional rights must be predicated on a viable underlying constitutional claim. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005).

Here, Plaintiff provides no evidence that Defendants had any sort of meeting of the minds. Outside of mentioning the word 'conspiracy,' Plaintiff does not support this allegation in any meaningful way. Regarding the whispered comment made by Zurbano to Santos during the March 11, 2015 visit, Plaintiff conceded at his deposition that he was assuming that Zurbano told Santos to reduce the medication. (Call Decl. at 32.) Mere speculation is not sufficient to create a triable issue of material fact. Plaintiff also conceded at his deposition that he did not believe Spence knew "anything about [him] at all prior" to their interaction on March 17, 2015. (Williams Decl. at 46:25-47:5.) Without knowing anything about Plaintiff, it would be impossible for Spence to have conspired with the other defendants regarding anything prior to March 17, 2015. Put plainly, Plaintiff has provided no evidence to suggest any sort of conspiracy existed between the parties.

Because Plaintiff cannot establish any meeting of the minds regarding a conspiracy, all defendants are entitled to summary judgment with respect to Plaintiff's conspiracy claims. Accordingly, the Court **RECOMMENDS** both motions be **GRANTED** and summary judgment entered on behalf of Defendants as to these claims.

**D. Exhaustion Regarding Spence**

Spence argues that Plaintiff has failed to exhaust administrative remedies and as such all claims against Spence are barred. (Spence Mot. at 19-21.)

The Prison Litigation Reform Act states, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion requires that an inmate "'complete the administrative review process in accordance with the applicable procedural rules'" before the inmate can initiate a lawsuit in a federal court. *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010) (quoting *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir.

2009)); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that "[p]roper exhaustion requires compliance with an agency's deadlines and other critical procedural rules"). Exhaustion is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Failure to exhaust administrative remedies is "an affirmative defense the defendant must plead and prove." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment." *Id.*

California's administrative process requires an inmate: (1) to file his or her complaint with the agency before fifteen days after the event took place; and (2) to complete three levels of formal review. *Harvey.* 605 F.3d at 683-84; *see also* 15 CCR § 3084.1. "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the [inmate's original complaint]." 15 CCR § 3084.1(b).

Plaintiff filed at least five inmate appeals related to the underlying incidents. (Compl. at ¶¶ 2-6.) Only two of these appeals, Appeal Number RJD-B-15-01663 and Appeal Number RJD-B-15-01930, mention Defendant Spence. (Compl. at 44; Self Decl., ECF No. 88-7 at ¶¶ 8-9.) In Appeal Number RJD-B-15-01663 Plaintiff mentions that Defendant Spence interviewed Plaintiff and placed Plaintiff on administrative segregation. (Compl. at 44; Self Decl. at ¶¶ 6-9.) Appeal Number RJD-B-15-01663 was processed through all three levels of review. However, the appeal makes no mention of wrongdoing by Defendant Spence. Therefore, Appeal Number RJD-B-15-01663 cannot satisfy the exhaustion requirement as to any allegations Plaintiff now has against Defendant Spence because it does not address the same issues now raised before the Court. Similarly, Appeal Number RJD-B-15-01930 mentions Defendant Spence but alleges no wrongdoing on his behalf. (Self Decl. at ¶.) The remaining inmate appeals did not mention Defendant Spence at all. (Compl. at 83, 123-25, 147, 204-08.)

Here, the undisputed evidence clearly shows that Plaintiff has not exhausted his administrative remedies and Spence is entitled to summary judgment. Accordingly, the

Court **RECOMMENDS** that Spence's Motion be **GRANTED** on the grounds that Plaintiff failed to properly exhaust his administrative remedies.

### E. Plaintiff's State Tort Claims

Plaintiff also alleges Defendants are liable for intentional infliction of emotional distress and negligence. (Compl. at ¶¶ 93, 94.) Defendants Zurbano, Santos, Steadman, and Roggelin argue the Court should decline jurisdiction over the state law claims or, in the alternative, grant summary judgment on their behalf. (Zurbano Mot. at 29-33.) Spence argues Plaintiff's state law claims fail against him because Plaintiff failed to comply with California's Tort Claims Act. (Spence Mot. at 27-28.)

#### i. Jurisdiction

In any civil case where a federal district court has original jurisdiction, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Supplemental jurisdiction may only be granted when the state and federal claims "arise from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). Generally, the state claims should be dismissed if the federal claims are dismissed before trial. *Id.* at 726. However, this is not a "mandatory rule to be applied inflexibly in all cases." *See Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, there is no dispute that the state law claims are rooted in a common nucleus of operative fact. Further, for interests of "judicial economy, convenience, and fairness to the litigants", it would be more efficient to recognize supplemental jurisdiction in this case. *See In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1491 (9th Cir. 1985). Finally, considerable time has passed since the filing of this Complaint and discovery has already been completed in the matter, further supporting the Court retaining supplemental jurisdiction. *See Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520 (9th Cir. 1989) (stating that the purposes of judicial economy were well served by maintaining supplemental

jurisdiction after federal claims had been dismissed). For these reasons, this Court **RECOMMENDS** that supplemental jurisdiction over Plaintiff's state claims be retained.

### ii. Plaintiff's Intentional Infliction of Emotional Distress Claim

Plaintiff alleges that Defendants intentionally filed false reports against Plaintiff knowing that it would subject Plaintiff to disciplinary action and cause emotional distress. (Compl. at ¶ 93.)

In California, the elements of intentional infliction of emotional distress are:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct.

*Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (citing *Christensen v. Superior Court*, 54 Cal. 3d 868 (Cal. 1991)). Outrageous conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (Cal. 1982). In addition, this conduct must be directed at the plaintiff. *Sabow*, 93 F.3d at 1454.

Here, Plaintiff's claim rests on the filing of false reports against him. Santos and Spence filed no such reports. Accordingly, they are entitled to judgment in their favor and the Court **RECOMMENDS** summary judgment be entered on their behalf as to the intentional infliction of emotional distress claim.

Regarding Zurbano, Steadman, and Roggelin, Plaintiff provides no evidence that their alleged conduct is extreme or outrageous. As stated above, a chrono, filed by Zurbano and Roggelin, is not an adverse action because it is merely informative. While an RVR, which was filed by Steadman, may be considered an adverse action, Plaintiff has provided no evidence that demonstrates filing these documents is so extreme that it exceeds "all bounds of that usually tolerated in a civilized community." *Davidson*, 32. Cal. 3d at 209. Even assuming for the sake of Plaintiff's argument that the Defendants knew the allegations in the reports were false, Plaintiff has provided no evidence that shows the

17

16-CV-2715-JLS-WVG

Defendants knew or should have known the filing of such reports would lead to severe emotional distress let alone that they did so purposely or in reckless disregard of the probability of causing such distress.

Regarding the third element, Plaintiff has provided no evidence that shows Zurbano, Steadman, or Roggelin's actions were the actual or proximate cause of Plaintiff's alleged emotional distress.

Plaintiff has failed to make a sufficient showing on two essential elements of this claim. Accordingly, the Court **RECOMMENDS** that Defendants' Motions be **GRANTED** and summary judgment be entered on their behalf as to the claim of intentional infliction of emotional distress.

### iii. Plaintiff's Negligence Claim

Plaintiff alleges that Defendants were each negligent in their respective duties. (Compl. at ¶ 94.) In his Opposition, Plaintiff clarifies that this claim is made against Santos for reducing Plaintiff's morphine prescription without conducting a sufficient medical examination.[8] (*See* Pl's Opp'n at 38:11-39:23.)

Negligence is the "failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm." *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 753-54 (Cal. 2007). Professional negligence is the "'failure to use the skill and care that a reasonably careful professional operating in the field would have used in similar circumstances, which failure proximately causes damage to the plaintiff.'" *Jameson v. Desta*, 215 Cal. App. 4th 1144, 1166 (Cal. Ct. App. 2013) (quoting *Cyr v. McGovran*, 206 Cal. App. 4th 645, 651 (Cal. Ct. App. 2012).

Here, Santos has declared that it was his "medical opinion and belief that Plaintiff was suffering from inflammation" and "believed that a nonsteroidal anti-inflammatory

---

[8] Plaintiff mentions Zurbano and Steadman in his Opposition in this section but that Zurbano and Steadman were deliberately indifferent to Plaintiff's medical condition, which is discussed in regards to Plaintiff's Eighth Amendment claims.

drug" combined with a reduced morphine dosage was in Plaintiff's best interest. (Santos Decl. at ¶ 10.) Plaintiff does not offer any evidence, besides his conclusory allegations, to support a claim that Santos "failed to use the skill and care" that a reasonable doctor in a similar situation would have used in similar circumstances. *Jameson*, 215 Cal. App. 4th at 1166. Given this, Plaintiff cannot show there is a triable issue of material fact as to his negligence claim. Accordingly, the Court **RECOMMENDS** the Motion be **GRANTED** and summary judgment entered on behalf of Santos as to the negligence claim.

## V. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Defendants' Motions be **GRANTED** and summary judgment entered on behalf of all Defendants.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

Additionally, **IT IS ORDERED:**

1. That **no later than March 1, 2019**, any party to this action may file written objection with the Court and serve a copy on all parties. Given the extensive extensions the Court has granted Plaintiff and the delay that has caused, the parties should not expect that any further extensions will be granted.

2. **The objection shall be no more than 15 pages in length** and shall be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specific time may waive to raise those objections on the appeal. **No reply briefs in response to the Objections will be accepted.**

3. Plaintiff need not make any copies of his Objections and should mail the original of his Objections directly to the Court.

4. Plaintiff is also excused from serving a copy upon Defendants. Service upon Defendants shall be deemed completed upon transmission of the Notice of Electronic Filing issued by the CM/ECF system.

5. The Attorney General's Office shall request that a litigation coordinator be

19

16-CV-2715-JLS-WVG

assigned to Plaintiff for the timely filing of any Objections.

      6.      The Attorney General's Office shall cause personal delivery of a hard copy of this R&R by the litigation coordinator within one (1) business day of filing.

      7.      On or before **February 20, 2019**, the Attorney General's Office shall file a status report regarding its compliance with these mandates.

**IT IS SO ORDERED**.

Dated: February 13, 2019

_____
Hon. William V. Gallo
United States Magistrate Judge